NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 13-1219

UNITED STATES OF AMERICA

v.

CALVIN LEE DYE,
Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(Crim. No. 2-08-cr-00384-001)
District Judge: Hon. Alan N. Bloch

Submitted pursuant to Third Circuit LAR 34.1(a)
October 31, 2014

BEFORE: McKEE, *Chief Judge*, GREENAWAY, JR., and
KRAUSE, *Circuit Judges.*

(Opinion filed: August 26, 2015)

OPINION*

McKEE, *Chief Judge*.

Calvin Lee Dye appeals the denial of the motion he filed pursuant to 28 U.S.C. §
2255, in which he alleged, *inter alia*, that his trial counsel rendered ineffective assistance
by failing to advise him of the consequences of going to trial and failing to advise him to
enter a guilty plea. For the reasons that follow, we will affirm the district court.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

# I. DISTRICT COURT PROCEEDINGS
## AND DIRECT APPEAL[1]

Dye was charged with violating 18 U.S.C. § 2422(b) (Count 1), and 18 U.S.C. § 2423(b) (Count 2). At trial, Dye admitted his guilt to Count 2. However, he challenged the sufficiency of the evidence supporting Count 1 and argued that the female he contacted was a "seductress" who persuaded, induced, and enticed him, not the other way around. The jury rejected this theory and found Dye guilty on both counts.

Using the 2008 Guidelines Manual, the Presentence Report ("PSR") applied U.S.S.G. § 2G1.3 and three enhancements to both of Dye's counts of conviction. (PSR ¶¶ 14, 15, 16.) Dye's adjusted offense level was 34, including three enhancements. (PSR ¶¶ 14-16.) These enhancements resulted from the offense involving a minor between the ages of 12 and 16 (§ 2G2.1(b)(1)(B)), Dye's masturbation in front of his web camera (§ 2G2.1(b)(2)(a)) and because the offense involved use of a computer (§ 2G2.1(b)(6))(2)(B)).

However, the PSR also applied § 2G1.3(c)(1) which applies when the crime involves "causing . . . offering or seeking . . . a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct[.]" When those

---

[1] Inasmuch as we are writing only for the parties, we will not set forth the procedural history or evidence produced at trial except insofar as is helpful to our discussion. However, a more detailed recitation of the history and underlying facts are set out in the NPO affirming Dye's conviction on direct appeal. *See United States v. Dye*, 2010 WL 4146187 (3d Cir. Oct. 22, 2010).

circumstances are present, § 2G1.3(c)(1) directs the court to apply § 2G2.1. (PSR ¶ 16.) The Commentary to the latter instructs that the cross-reference:

> is to be construed broadly and includes all instances in which the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice, advertisement or other method, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct.

U.S.S.G. § 2G1.3(c)(1), cmt. n.5(A). The result was a base offense level of 32 (PSR ¶¶ 16, 17.) With the three 2-level enhancements, Dye's total offense level became 38, with a criminal history category of I, in order to reflect that both the base offense level and criminal history category determine the Guidelines range. The resulting Guideline range was 235-293 months imprisonment.[2]

However, the district court granted Dye's motion for a downward variance because it found that a sentence within the 235-293 advisory Guidelines range was "too severe." The district court determined that a sentence that was significantly lower than the Guidelines range but "five years higher than the statutory minimum" was adequate to address the concerns outlined in 18 § 3553(a). Thus, Dye was sentenced to 180 months imprisonment, to be followed by 10 years of supervised release.

Dye filed a timely appeal in which he challenged the sufficiency of the evidence to support his conviction on Count 1 and also argued that the district court erred when it applied the cross-reference at U.S.S.G. § 2G1.3(c)(1). In a NPO, we affirmed the

---

[2] The range for Count 1 was 120 months imprisonment to life, and Count 2 had a maximum term of 30 years imprisonment.

judgment of conviction and sentence.  *United States v. Dye*, 2010 WL 4146187 (3d Cir. Oct. 22, 2010).

## II. MOTION FOR COLLATERAL RELIEF

On September 28, 2011, Dye filed this pro se § 2255 motion to vacate, set aside or correct his sentence.  He alleged that prior counsel was ineffective for: (1) failing to advise him of the consequences of the cross-reference contained in § 2G1.3(c)(1) prior to sentencing; (2) failing to argue on direct appeal that Amendment 732 to the Guidelines should retroactively apply to him to give him a two-level reduction in his overall offense level; and (3) failing to investigate his mental capacity and request a competency hearing.[3]  The district court denied Dye's § 2255 motion without a hearing and declined to issue a Certificate of Appealability ("COA").  *United States v. Dye*, 2013 WL 24805 (W.D. Pa. Jan. 2, 2013).

Dye filed a Notice of Appeal, which we construed as an application for a COA. We entered the following order granting the COA in part as follows:

> The certificate is granted as to [Dye's] claim that, but for counsel's alleged failure to advise him of the applicability of the cross-reference contained in U.S.S.G. § 2G1.3(c)(1), he would have pled guilty and received a three-level reduction for acceptance of responsibility. See United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  We deny [Dye's] request for a certificate of appealability on all other grounds because, essentially for the reasons explained by the District Court, jurists of reason would not debate the District Court's

---

[3] Amendment 732 notes that § 2G1.3(b)(2)(B)'s undue influence enhancement should not be applied in a case where the only "minor" involved in the offence is an undercover law enforcement officer.  *See* U.S.S.G 2A3.2 cmt. n.3(B).

disposition of those claims.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## III. DISCUSSION

Dye contends that if trial counsel had informed him of the cross-reference, he would have pled guilty and received a three-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(b), which would have resulted in a base offense level of 35 and a criminal history category of I.  A base offense level of 35 yields an advisory Guidelines range of 168-210 months.  Dye claims this establishes ineffectiveness of counsel and prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).[4]

Dye does not contest the applicability of U.S.S.G. § 2G1.3(c)(1) and its cross-reference, § 2G2.1.  It applied whether he pled guilty or was convicted at a trial.

## A.[5]

Assuming that Dye's trial counsel had told him about the cross-reference and advised him to plead guilty, and assuming that Dye had pled guilty and received the three-level reduction for responsibility, his adjusted offense level would have been 35, which, together with his criminal history category of I, would have yielded an advisory Guidelines range of 168-210 months.  The sentence of 180 months imprisonment that the district court imposed is a mid-range sentence within the advisory range that would have

---

[4] "We exercise plenary review over the legal component of a claim of ineffective assistance of counsel.  The underlying facts are reviewed for clear error, and are subject to independent judgment on whether the facts thus found constitute constitutionally ineffective assistance of counsel."  *United States v. Smack*, 347 F.3d 533, 537 (3d Cir. 2003) (citations and internal quotation marks omitted).

[5] For purposes of this part of our analysis, we assume that Dye would have entered an "open" plea had he been properly informed about the cross-reference in the guidelines.

applied had Dye pled guilty and received the three-level reduction. Accordingly, Dye cannot establish the prejudice required under *Strickland*, even assuming that trial counsel was deficient in not informing him of the applicability of the cross-reference and not advising him to enter a guilty plea.

Although Dye claims that he can establish prejudice, his argument is as conclusory as it is unconvincing. Dye contends that the 180-- month sentence that was imposed reflected the district court's consideration of the fact that Dye did not accept responsibility and instead proceeded to trial. Dye's Br. at 15. The argument is based entirely on a portion of the Statement of Reasons filed by the district court after it imposed sentence. In Section VIII of the Statement of Reasons, the district court noted, *inter alia*, "defendant's failure to accept responsibility require[s] a sentence significantly above the statutory minimum." Dye concludes that without the claimed heavy emphasis the district court placed on his failure to accept responsibility that he would have received a "three-level reduction for acceptance of responsibility . . . and [the court] would have imposed the mandatory minimum sentence."[6] Dye's Br. at 16.

However, Dye's argument is without merit because it is clear that the district court's sentence of 180 months (5 years above the mandatory minimum) was not based solely on Dye not accepting responsibility. At Dye's sentencing hearing, the district court said that it did "agree with [Dye] that under the circumstances of this case, the Guidelines provide too severe of a sentence." App. 144. It also said that § 2G2.1 "fails

---

[6] As noted earlier, the mandatory minimum sentence was 10 years (120 months) on Count 1.

6

to properly reflect the Section 3553(a) considerations," and a "sentence significantly lower would more adequately address those factors." *Id*. To its credit, the district court explained why a sentence that was less severe than that recommended by the Guidelines would satisfactorily serve the court's concerns and the sentencing factors in § 3553. The care and thoroughness of the court's deliberations in imposing sentence is evident in the explanation it gave and we will therefore take the liberty of quoting the sentencing transcript at length. The court explained:

> While the need to deter crimes aimed at children such as those committed by the Defendant is great, a sentence of imprisonment of over 10 years, the statutory minimum in this case, would more than adequately deter most potential perpetrators.
>
> Few people would be unaffected by the prospect of spending no less than a decade in prison even without having a prior criminal record for committing such crimes. Likewise, while there is also a need to protect the public, and especially young girls from the Defendant, a lengthy term of supervised release with strict conditions following incarceration will allow the Court and the probation officer to monitor and regulate the Defendants' behavior well after his release. Further, the amount of rehabilitation that Defendant experiences will likely differ little, if at all, if he serves more than 10 years but less than 20 years in prison.
>
> Finally, the Defendant's history and characteristics do not support a sentence as much above the already high statutory minimum sentence as suggested by the Guidelines. The conduct in this case involve[d] fairly elaborate preparation by the Defendant.
>
> In regard to his plan to meet and have sex and photograph a minor and involved very graphic language and behavior including masturbating on-line to entice who the Defendant believed to be a 14-year-old girl, this conduct along with [D]efendant's failure to accept full responsibility for his

7

criminal conduct calls for a sentence significantly above the statutory minimum.

Based upon the Section 3553(a) factors, they do not call . . . for sentences as high as the extremely high sentence recommended by the Guidelines. A sentence several years higher that the statutory minimum would meet these concerns. While there may well be cases of this nature where the Guidelines do provide for a reasonable sentence, this is not one of them.

Accordingly, the Court finds that the policy supporting section 2G2.1 of the Guidelines does not apply to the facts of this case. Instead, a sentence five years higher than the statutory minimum is sufficient but not greater than necessary to comply with the Section 3553(a) factors. Therefore, . . .the Court will vary from the recommended guidelines [and sentence Dye] to a term of imprisonment of 180 months at each of Counts 1 and 2 to be served concurrently.

\*\*\*\*\*\*\*\*\*\*\*\*\*

Mr. Dye, although the United States Sentencing Guidelines recommend a sentence ranging from 235 to 293 months, the Court for the reasons already stated has decided to sentence you to a term of imprisonment of 180 months because this sentence adequately addresses the seriousness of your offenses.

It is therefore abundantly clear that Dye's conduct and the district court's analysis of the § 3553(a) factors drove his sentence, not the fact that he proceeded to trial and did not accept responsibility.[7] For these reasons, Dye cannot establish the prejudice prong of *Strickland*.

---

[7] To the extent that there is a conflict between the district court's oral pronouncements at sentencing and the written explanation in the Statement of Reasons, the oral pronouncements control. *See, e.g., United States v. Chasmer*, 952 F.2d 50, 52 (3d Cir. 1991) (It is a "firmly established and settled principle of federal criminal law that an

However, there are circumstances present here which need further elaboration and discussion. Until now, the analysis of Dye's appeal has proceeded on the assumption that Dye would have entered an "open" plea and received the three-level reduction for acceptance of responsibility had his trial counsel properly advised him of the applicability of the § 2G1.3(c)(1) cross-reference. But, the government notes that it did extend a formal offer to Dye's trial counsel to enter into a guilty plea in March 2009, and then later provided trial counsel with a document, dated May 2009, to serve as a discussion tool for plea negotiations.

The government has provided these plea documents in its supplemental appendix. It is evident, however, that these documents were not included in the record before the district court. Therefore, we may not consider them in our review. *See In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 96 (3d Cir. 1990). In light of the government's submission, Dye requests that we remand the case to the district court so that he can file an amended motion incorporating the documents and so that the district court may conduct an evidentiary hearing regarding the purported plea offers. We nevertheless decline to remand because – as explained below – these documents could not possibly form a basis for the relief Dye seeks.

In *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), the Supreme Court held that *Strickland* applies "to ineffective-assistance claims arising out of the plea process." More recently, and particularly relevant here, the Supreme Court held that, "as a general rule,

orally pronounced sentence controls over a judgment and commitment order when the two conflict.") (citation omitted).

9

defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). "When defense counsel allow[s] the offer to expire without advising the defendant [of the offer] or allowing him to consider it, defense counsel [does] not render the effective assistance the Constitution requires." *Id.* at 1409.

When defense counsel fails to communicate a formal offer to the defendant and the offer lapses, counsel's performance is deficient under *Strickland*. *Frye*, 132 S. Ct. at 1409. The Court in *Frye* explained what is required to show prejudice in that situation:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under . . . law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id*.

As noted, the government submits that on March 27, 2009, it sent Dye's trial counsel a formal offer, as that term is described in *Missouri v. Frye*, *supra*, to enter into a guilty plea. The government submits that the March 27, 2009, plea agreement was sent to Dye's trial counsel on April 1, 2009. The March 27, 2009 offer included a three-level reduction for acceptance of responsibility and – assuming that the § 2G1.3(c)(1) cross-

10

reference would have applied – acceptance of the offer would have resulted in an advisory Guidelines range of 168-210 months. This offer, if accepted by Dye and the district court, would have put Dye in the same position he claims he would have been in had trial counsel given him the advice he claims that trial counsel did not give him.

The government notes that although the March 2009 offer was communicated to trial counsel, it concedes that there is no record evidence that trial counsel communicated the offer to Dye. Moreover, there is no mention of the March 2009 offer in the district court's opinion disposing of Dye's § 2255 motion.

In any event, the March 2009 offer, if Dye had been aware of it and had he and the district court accepted it, would not affect the outcome of his appeal. As noted, the plea offer would have yielded an advisory Guidelines range of 168 to 210 months. That is the same Guidelines range that Dye would have been in had he entered an "open" plea and received the three-level reduction for acceptance of responsibility. And, as also noted, the sentence he did receive after proceeding to trial – 180 months – is a mid-range sentence within 168 to 210 months. Given the district court's care and explanation of the sentence that was imposed, Dye cannot establish that a guilty plea pursuant to the March 2009 plea offer would have had a reasonable probability of achieving a different sentence. Therefore, assuming for argument's sake that trial counsel did not inform Dye of the March 2009 plea agreement, Dye suffered no prejudice.

The existence of the May 1, 2009 draft plea agreement provides no solace to Dye either. On appeal, the government takes pains to argue that a document that was sent to defense counsel on May 1, 2009 was a draft, and neither intended as a formal plea offer,

11

nor communicated as one.  According to the government, that document was merely an invitation to engage in plea negotiations in the form of a draft plea agreement.  The government argues:

> In May 2009, the Government forwarded to Dye's trial counsel an invitation to engage in plea negotiations in the form of a draft plea agreement.   The document was prominently labeled "DRAFT," did not bear the signature of the then – U.S. Attorney, and was accompanied by an email from the prosecutor stating that it was a draft and that it had not been approved by the U.S. Attorney. The document included a stipulation that the cross-reference of U.S.S.G. § 2 G1.3(c)(1) would not apply (but this stipulation would not be binding on the District Court) and that the 3-level reduction for acceptance of responsibility would apply.

The May 2009 draft plea agreement raised the possibility that Dye could have entered a plea without the application of § 2G1.3(c)(1), which would have resulted in a base offense level of 34, which would yield an advisory Guidelines range of 108-135 months.[8] There is nothing in the record to indicate, what, if anything, happened to the May 2009 document.  In any event, the draft plea agreement was not a "formal offer," and the Court in *Frye* was careful to limit counsel's obligation to disclose to "formal" plea agreements.

## IV. CONCLUSION

For all of the above reasons, we will affirm the district court.

---

[8] Of course, the Guidelines range would have to be revised to 120 – 135 months because of the applicable statutory minimum of 10 years on Count 1.